**Opinion issued July 21, 2026**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-24-00402-CV

———————————

**LANNY V. DAO, Appellant**

**V.**

**MISSION BEND HOMEOWNERS ASSOCIATION, INC., Appellee**

On Appeal from the 80th District Court
Harris County, Texas
Trial Court Case No. 2023-81307

## MEMORANDUM OPINION

Appellant, Lanny V. Dao ("Dao"), appeals from the trial court's order granting the plea to the jurisdiction of appellee, Mission Bend Homeowners Association, Inc. ("Association"), in Dao's suit seeking access to the Association's books and records. In six issues, Dao contends the trial court erred in (1) concluding

it lacked subject matter jurisdiction over Dao's claims, (2) misinterpreting the "amount in controversy" requirement, (3) finding that Texas Property Code section 209.005(n) grants exclusive jurisdiction to justice courts, (4) finding that the district court was not the proper venue for Dao's claims, (5) dismissing the case without considering the substantive right of homeowners to access homeowner association records under Texas Property Code section 209.005, and (6) ignoring Texas Government Code section 24.007 which provides separate and independent bases for district court jurisdiction.

We reverse and remand.

## Background

Dao is a homeowner in Mission Bend, a residential deed-restricted community in Harris County, Texas. The Association enforces the deed restrictions related to properties within Mission Bend.

In November 2023, Dao, proceeding pro se, filed an original petition in district court seeking injunctive relief against the Association, alleging that it had refused to provide him with requested financial information in violation of Texas Property Code section 209.005. Dao sought the production of:

"(1) All relevant financial statements from all financial institutions handling association funds from August 2022 to the present, including bank statements and meeting minutes[;]

2

(2) Documentation for check 7293 ($21,437.50) on August 17, 2018, including purpose, board authorization, vendor invoices, and vendor tax form 1099-MISC[;]

(3) Documentation of payments to Ramos, Lopez, and Classic Sports, including vendor invoices, contracts, and board authorization[;]

(4) Relevant records clarifying the $50,000 withdrawal by Terry Blair on May 30, 2018[;]

(5) A copy of the individual life insurance policy for board member Terry G. Blair and pertinent approval documents[;]

(6) Details of the fidelity bond insurance for the Treasurer's position as mandated by the by-laws[; and]

(7) Documentation of payments to board member Lynne Alwine during the time frame of 2015 to 2022, including several large payments during the pandemic year (2020)."

The petition further alleged that Dao "reserves the right to amend these pleadings to allege other and further damages as may be determined once discovery is complete and before the case proceeds to trial."

The Association filed a plea to the jurisdiction and motion to dismiss Dao's claims. It asserted that the district court lacked jurisdiction over the claims because justice courts have exclusive jurisdiction over matters arising under Texas Property Code section 209.005(n) relating to the denial of access to a homeowner association's books and records. The Association sought dismissal of Dao's claims against it for lack of jurisdiction.

In his response to the Association's plea, Dao asserted that the district court has original jurisdiction over civil matters in which, as here, the amount in controversy is more than $500. He asserted that although Texas Property Code section 209.005(n) does, in fact, provide an option for homeowners to file a petition with the justice court, the statute does not confer exclusive jurisdiction on justice courts as evidenced by the use of "may" in the statute, which is permissive rather than mandatory. Dao further asserted that he had paid more than $1,500 in annual assessments from 2015 to 2022 for the benefits and betterment of the community, and the Association had collected more than $2 million in annual assessments from more than 1,400 homeowners. Thus, Dao argued, the amount in controversy exceeded the $500 threshold requirement to file suit in district court, and the Association's refusal to provide him with the requested records constituted an injury-in-fact to his legally protected interests.

In its reply to Dao's response, the Association argued that Dao's petition failed to substantiate an "amount in controversy" sufficient to confer jurisdiction upon the district court. It asserted that Dao's petition exclusively sought the production of documents—association records, financial statements, and related documents—without alleging any monetary damages directly attributable to the Association's actions. It asserted that the "amount in controversy" requirement pertains to the monetary value of the claim itself and must be based on direct,

4

personal loss due to the Association's actions, not the aggregate of unrelated transactions or the total assessments collected over several years. The Association noted that the clear legislative intent behind Texas Property Code section 209.005(n) is that disputes concerning a property owner's access to homeowner association records are to be resolved within the jurisdiction of the justice court. It argued that while it is true that the statute contains discretionary language by its use of "may," this discretion does not concern the selection of the court by the aggrieved party, but rather the decision of whether to initiate the lawsuit in the first place.

Dao filed a sur-reply asserting that he sufficiently pleaded an amount in controversy because his petition identified financial transactions and expenditures by the Association totaling more than $500. He argued that the Association denied him access to records which he had a legally protected right to obtain, and that this denial constituted a direct, personal loss in itself, even if the precise monetary value of the loss was not yet quantified. Dao asserted that the deprivation of his legally protected right, combined with the possible financial implications of the information contained in the records, was sufficient to establish the requisite "amount in controversy" at this stage of the proceedings. He argued that the permissive language in section 209.005(n), which allows for suits in justice court, does not negate the district court's general jurisdiction.

The trial court entered an order granting the Association's plea to the jurisdiction and dismissing Dao's claims for lack of jurisdiction on May 22, 2024. Upon Dao's request, the trial court entered findings of fact and conclusions of law.[1] This appeal followed.

## Plea to the Jurisdiction

The existence of subject matter jurisdiction is a question of law that can be challenged by a plea to the jurisdiction. *See Harris Cnty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018). A plea to the jurisdiction is the proper procedural device for challenging a suit brought in one court when another court has continuing and exclusive jurisdiction. *Tex. Dep't of Crim. Just. v. Bovee*, 632 S.W.3d 244, 251 (Tex. App.—Houston [1st Dist.] 2021, no pet.). We review the trial court's denial of such a plea de novo. *Annab*, 547 S.W.3d at 612. If the court does not have jurisdiction over the subject matter of the suit, it must dismiss the case without

---

[1] A party is entitled to findings of fact and conclusions of law after a conventional trial on the merits to the court. *IKB Indus. (Nigeria) Ltd. v. Pro–Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997). A "trial" is a hearing in which the court hears and receives evidence. *U. Lawrence Boze' & Assocs., P.C. v. Harris Cnty. Appraisal Dist.*, 368 S.W.3d 17, 33 (Tex. App.—Houston [1st Dist.] 2011, no pet.). If the trial court renders judgment as a matter of law, such as when a court grants dismissal for lack of jurisdiction, findings and conclusions are not improper, but they have no purpose and should not be requested or considered on appeal. *See IKB Indus.*, 938 S.W.2d at 443; *U. Lawrence Boze'*, 368 S.W.3d at 33. When reviewing these decisions, we exercise our own judgment in determining each issue, and, therefore, we "cannot consider findings and conclusions even if they are included in the record." *U. Lawrence Boze'*, 368 S.W.3d at 33.

prejudice. *See Jansen v. Fitzpatrick*, 14 S.W.3d 426, 431 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing *Bell v. State Dept. of Highways & Pub. Transp.*, 945 S.W.2d 292, 295 (Tex. App.—Houston [1st Dist.] 1997, writ denied)).

When we consider a trial court's order on a plea to the jurisdiction, we construe the pleadings in the plaintiff's favor and look to the pleader's intent. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). "When a plaintiff fails to plead facts that establish jurisdiction, but the petition does not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend." *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002) (citing *Peek v. Equip. Serv. Co.*, 779 S.W.2d 802, 804–05 (Tex. 1989)). On the other hand, if the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *See Brown*, 80 S.W.3d at 555.

**Discussion**

In six issues, Dao asserts that the trial court erred in (1) concluding it lacked subject matter jurisdiction over his claims, (2) misinterpreting the "amount in controversy" requirement, (3) finding that Texas Property Code section 209.005(n) grants exclusive jurisdiction to justice courts, (4) finding that the district court was not the proper venue for Dao's claims, (5) dismissing the case without considering

the substantive right of homeowners to access association records under Texas Property Code section 209.005, and (6) ignoring Texas Government Code section 24.007 which provides separate and independent bases for district court jurisdiction. Because these issues are intertwined, we address them together.

We begin with an overview of Texas court jurisdiction.

## A.    General Jurisdictional Framework

The Texas Constitution and state statutes provide the sole sources of jurisdiction for Texas courts. *Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996). District courts are courts of general jurisdiction and generally have subject matter jurisdiction absent a showing to the contrary. *In re Entergy Corp.*, 142 S.W.3d 316, 322 (Tex. 2004) (orig. proceeding); *see also Dubai Petroleum Co.* v. *Kazi*, 12 S.W.3d 71, 75 (Tex. 2000) ("[A]ll claims are presumed to fall within the jurisdiction of the district court unless the Legislature or Congress has provided that they must be heard elsewhere."). Under article 5, section 8 of the Texas Constitution, "[d]istrict court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." TEX. CONST. art. 5, § 8. In addition to this constitutional jurisdiction, the Legislature has provided that district courts have "original jurisdiction of a civil matter in which the amount

8

in controversy is more than $500, exclusive of interest." TEX. GOV'T CODE ANN. § 24.007.

By contrast, Texas justice courts are courts of limited jurisdiction. *Town of Anthony v. Lopez*, 661 S.W.3d 667, 670 (Tex. App.—El Paso 2023, pet. denied). Article 5, section 19 of the Texas Constitution grants justice courts "exclusive jurisdiction in civil matters where the amount in controversy is two hundred dollars or less, and such other jurisdiction as may be provided by law." TEX. CONST. art. 5, § 19. The Texas Legislature has also expressly granted justice courts exclusive jurisdiction over particular types of claims. For example, it has committed jurisdiction of forcible detainer (eviction) suits exclusively to a justice court in the precinct where the property in question is located. *See* TEX. PROP. CODE ANN. § 24.004. Texas Government Code section 27.031 grants justice courts original jurisdiction over "civil matters in which exclusive jurisdiction is not in the district or county court and in which the amount in controversy is not more than $20,000, exclusive of interest." TEX. GOV'T CODE ANN. § 27.031(a)(1). Thus, the original jurisdiction of justice courts is concurrent with that of district courts in civil cases in which the amount in controversy exceeds $500 but does not exceed $20,000.

## B. Texas Property Code Section 209 Claims

Dao asserts that the trial court erred in concluding that it lacked jurisdiction over his claims against the Association. He argues that although Texas Property

Code section 209.005(n) does, in fact, allow homeowners to file a petition in the justice court, the statute does not confer exclusive jurisdiction on justice courts as evidenced by the use of "may" in the statute, which is permissive rather than mandatory. He asserts that the district court has original jurisdiction over civil matters in which, as here, the amount in controversy is more than $500.

In its brief on appeal, as in its plea to the jurisdiction, the Association asserts that the trial court properly concluded that it lacked jurisdiction over Dao's claims. It asserts that "subsection (n) of § 209.005 explicitly states that disputes arising from the denial of access to records are to be brought before the justice court, not the district court." Thus, it reasons that section 209.005(n) grants justice courts exclusive authority over such claims. We disagree.

Chapter 209 of the Texas Property Code, known as the Texas Residential Property Owners Protection Act, governs the relationship between residential property owners' associations and their members. *See generally* TEX. PROP. CODE ANN. §§ 209.001–.017; *see also Dao v. Mission Bend Homeowners Ass'n, Inc.*, 667 S.W.3d 304, 311 (Tex. App.—Houston [1st Dist.] 2022, no pet.). Section 209.005 provides that "a property owners' association shall make the books and records of the association, including financial records, open to and reasonably available for examination by an owner . . . in accordance with this section. An owner is entitled

to obtain from the association copies of information contained in the books and records." TEX. PROP. CODE ANN. § 209.005(b).

Relevant here, section 209.005(n) states: "A member of a property owners' association who is denied access to or copies of association books or records to which the member is entitled under this section may file a petition with the justice of the peace of a justice precinct in which all or part of the property that is governed by the association is located requesting relief in accordance with this subsection." *Id.* § 209.005(n). If the justice court finds that the member is entitled to access, the court may grant remedies, including an order to release records, attorney's fees, and a judgment authorizing the owner to deduct awarded amounts from future assessments. *Id.*

When construing a statute, "[o]ur primary objective is to determine the Legislature's intent which, when possible, we discern from the plain meaning of the words chosen." *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006); *see also Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019) ("A statute's plain language is the most reliable guide to the Legislature's intent."). As Dao notes, the Legislature's use of the permissive term "may" in section 209.005(n) is incompatible with the concept of exclusive jurisdiction. "'May' creates discretionary authority or grants permission or a power," whereas the terms "shall" and "must" convey mandatory conditions. TEX. GOV'T CODE ANN. §§ 311.016(1)–(3). Section

11

209.005(n) contains no language mandating exclusive jurisdiction in justice courts over record access claims. *See Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 447 (Tex. 1996) (noting statute merely providing that action "may" be brought in district court "does not express an intention to grant *exclusive* jurisdiction to district courts," but rather, "to the extent that statutory courts share *concurrent* jurisdiction with district courts, nothing in [such a] statute limits or excludes that concurrent jurisdiction"); *see also Eris v. Giannakopoulos*, 369 S.W.3d 618, 620–21 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd) (concluding language of Texas Property Code section 23.002 did not indicate legislative intent that district courts have exclusive jurisdiction over partition actions; rather, use of word "may" demonstrated permissive, rather than mandatory, procedure). The Association has directed us to no authorities, nor are we aware of any, holding that justice courts have exclusive jurisdiction over Texas Property Code section 209.005(n) claims.[2]

---

[2] Other courts of appeals have considered chapter 209 claims without any suggestion that district or county courts lacked jurisdiction to hear such claims. *See, e.g.*, *Swan Point Landing Cmty. Ass'n, Inc. v. Martin*, 718 S.W.3d 310, 316 (Tex. App.—Corpus Christi 2025, pet. denied) (considering appeal by property owners' association from district court's order granting summary judgment to property owners on their claim that association violated open meeting protocols under Texas Property Code section 209.0051 without suggesting that district court lacked jurisdiction); *Candle Meadow Homeowners Ass'n v. Jackson*, No. 05-17-01227-CV, 2018 WL 6187616, at *4 (Tex. App.—Dallas Nov. 27, 2018, no pet.) (mem. op.) (examining section 209.0051's open meeting requirements in context of district court proceeding without suggesting that justice courts held exclusive jurisdiction); *Spears v. Falcon Pointess Cmty. Homeowner's Ass'n*, No. 03-14-00650-CV, 2016 WL 1756486, at *4 (Tex. App.—Austin Apr. 28, 2016, no pet.) (mem. op.) (affirming in part, and reversing in part, county court at law's order granting

Thus, we conclude that the district court had jurisdiction over Dao's claims so long as his suit was within the jurisdictional amount-in-controversy range over which district courts have concurrent jurisdiction with justice courts.

## C. Amount in Controversy

Dao asserts that the district court erred in its interpretation of the "amount in controversy" requirement. Specifically, he argues that the court mistakenly concluded that his petition failed to establish an "amount in controversy" sufficient to confer jurisdiction on the district court. According to Dao, he is seeking information about the legitimacy of a $50,000 withdrawal from the Association's funds (and potentially the return of these funds), which exceeds the jurisdictional limit of justice courts. He also asserts that the trial court's narrow view that "amount in controversy" requires a direct, personal, financial loss conflicts with the prevailing legal standard.

Section 24.007 of the Texas Government Code states that "[a] district court has original jurisdiction of a civil matter in which the amount in controversy is more than $500, exclusive of interest." TEX. GOV'T CODE ANN. § 24.007. In Texas, the sum of money in controversy between the parties to a civil suit is a component of

homeowner association's summary judgment motion and denying homeowners' summary judgment motion on their claim that association violated section 209.005 by refusing to make its records available without raising any jurisdictional concern).

subject matter jurisdiction. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

In his original petition, Dao did not allege a specific amount of damages or that the damages sustained exceeded the district court's minimum jurisdictional limits. Dao sought the production of financial and insurance-related documents to which he alleged he was entitled, which the Association refused to provide despite numerous requests, in violation of Texas Property Code section 209.005. Dao's petition stated that he "reserves the right to amend these pleadings to allege other and further damages as may be determined once discovery is complete and before the case proceeds to trial."

The Association argues that Dao's original petition failed to substantiate an "amount in controversy" sufficient to confer jurisdiction upon the district court. It points out that Dao's petition exclusively requested document production without alleging any monetary damages directly attributable to the Association's actions. According to the Association, the jurisdictional "amount in controversy" must be based on direct, personal loss to Dao due to the Association's specific actions or omissions. It argues that to the extent Dao seeks to obtain the records free of charge as a form of damages, the fees associated with the production of the records are nominal and do not approach the $500 threshold required for district court jurisdiction.

Dao responds that the Association mischaracterizes the nature of his claims. He is not seeking "free documents" as a form of damages, but rather is seeking information regarding a $50,000 withdrawal, among other things. He asserts that the value of this withdrawal—not the cost of producing documents—constitutes the true amount in controversy. According to Dao, the right to be protected, i.e., his access to financial information, and the potential injury to be prevented, i.e., the misuse of $50,000 in association funds, establish an amount in controversy within the district court's jurisdiction, even if the precise monetary value of that loss is not yet quantified.

"It has long been the law that the phrase 'amount in controversy,' in the jurisdictional context, means 'the sum of money or the value of the thing originally sued for.'" *Tune v. Tex. Dep't of Pub. Safety*, 23 S.W.3d 358, 361 (Tex. 2000). The Texas Supreme Court has noted that "[w]hile the amount in controversy is frequently determined by the damages sought, that is not always so." *Id.*

The Texas Supreme Court's decision in *Peek v. Equipment Service Co.*, 779 S.W.2d 802 (Tex. 1989) is instructive. In *Peek*, the Court considered whether a plaintiff seeking damages under the wrongful death and survival statutes invoked the jurisdiction of a district court by filing a petition which pleaded various categories of damages but failed to allege either a specific amount of damages or that the damages sustained exceeded the court's minimum jurisdictional limits. *See*

15

779 S.W.2d at 802. The district court dismissed the suit concluding that its jurisdiction was not invoked because the plaintiffs' pleading had not properly alleged damages until after the applicable statute of limitations had run. *See id.* at 802–03. The court of appeals, in two unpublished opinions, affirmed. *See id.* at 803.

The Texas Supreme Court disagreed. *See id.* The Court concluded that the plaintiffs' original pleading, although defective, was sufficient to invoke the district court's jurisdiction and prevent the running of limitations. *See id.* The Court noted that "[a]lthough the petition did not expressly allege that the amount sought was within the court's jurisdiction, neither did anything in the petition suggest that the court lacked jurisdiction." *Id.* at 804. The Court explained:

> In any doubtful case all intendments of the plaintiff's pleading will be in favor of the jurisdiction. Unless it is clear from the pleadings that the court lacks jurisdiction of the amount in controversy, it should retain the case.
>
> . . . .
>
> The failure of a plaintiff to state a jurisdictional amount in controversy in its petition, without more, thus will not deprive the trial court of jurisdiction. Even if the jurisdictional amount is never established by pleading, in fact, a plaintiff may recover if jurisdiction is proved at trial.

*Id.* at 804–05 (internal citations omitted). The Court held that "the omission of any allegation regarding the amount in controversy from plaintiff's petition did not deprive the court of jurisdiction, but was instead a defect in pleading subject to

16

special exceptions and amendment. Although defective, the original petition filed in this cause was sufficient to invoke the jurisdiction of the district court." *Id.* at 805; *see also Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004) (concluding plaintiff should be afforded opportunity to amend its pleading when petition does not contain sufficient facts to affirmatively demonstrate trial court's jurisdiction but does not affirmatively demonstrate incurable defects in jurisdiction).

We note that the "*Peek* presumption"—that the failure of a plaintiff to state a jurisdictional amount in controversy in his petition, without more, will not deprive the trial court of jurisdiction—applies only when (1) the defendant fails to object to the plaintiff's defective pleadings, and (2) the plaintiff's pleadings do not affirmatively demonstrate a lack of jurisdiction. *See Buethe v. O'Brien*, No. 03-09-00363-CV, 2010 WL 2643087, at *3 (Tex. App.—Austin June 30, 2010, no pet.) (mem. op.) (citing *Peek*, 779 S.W.2d at 804 (quotation omitted)). If those conditions are met, the court should presume in favor of jurisdiction and allow the plaintiff an opportunity to prove jurisdiction at trial. *Id.* The Association did not object to Dao's pleading.

Applying these principles, we conclude that although Dao's original petition did not allege a specific amount of damages or that the damages sustained exceeded the trial court's minimum jurisdictional limits, neither is it clear from his pleading

17

that the district court lacked jurisdiction over the amount in controversy. We hold that the district court erred in granting the Association's plea to the jurisdiction and should have retained the case and allowed Dao an opportunity to amend his pleading before dismissing his claims.

We sustain Dao's first issue.[3]

## Conclusion

We reverse the trial court's order granting the Association's plea to the jurisdiction and dismissing Dao's claims against it and remand the cause to the trial court for further proceedings consistent with this opinion.

Kristin Guiney
Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.

---

[3] In light of our disposition, we need not address Dao's remaining issues. *See* TEX. R. APP. P. 47.1.